# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,

v.

Johnny Cuong Tran (01),
Tuan Van Nguyen (02),
Timothy Quang Tran (04),
Kevin Dinh Phan (05),
Tuan Ngoc Pham (07),
Vinh Xuan Hoang (12),
Phung Duc Hoang (13), and
Phuong The Cong (15),

      Defendants.

Criminal No. 09-172 MJD/SRN

**REPORT AND RECOMMENDATION**

---

LeeAnn K. Bell, Esq., United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Plaintiff.

John C. Brink, Esq., Brink & Gerdts, 331 2nd Avenue South, Suite 110, Minneapolis, MN 55401, for Defendant Johnny Cuong Tran (01).

Earl P Gray, Esq., 332 Minnesota Street, Suite W 1610, St. Paul, MN 55101, for Defendant Tuan Van Nguyen (02).

Julius A. Nolen, Esq., Berndt Law Office, 333 Washington Avenue North, Suite 101, Minneapolis, MN 55401, for Defendant Timothy Quang Tran (04).

Douglas T. Kans, Esq., Kans Law Firm, LLC, 3800 American Boulevard West, Suite 180, Bloomington, MN 55431, for Defendant Kevin Dinh Phan (05).

Timothy D. Webb, Esq., Timothy D. Webb, PLLC, 8500 Normandale Lake Boulevard, Suite 1080, Minneapolis, MN 55437, for Defendant Tuan Ngoc Pham (07).

Douglas A. Myren, 4544 Grand Avenue South, Minneapolis, MN 55419, for Defendant Vinh Xuan Hoang (12).

Kyle D. White, Esq., 332 Minnesota Street, Suite W-1710, Saint Paul, MN 55101, for Defendant Phung Duc Hoang (13).

Charles Hawkins, Esq., 150 South Fifth Street, Suite 3260 Minneapolis, MN 55402, for Defendant Phuong The Cong (15).

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Johnny Cuong Tran's (01) Motion to Suppress All Electronic Surveillance and Any Evidence Derived Therefrom [Doc. No. 264], Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches or Seizures [Doc. No. 265], and Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Interrogations [Doc. No. 266]; Defendant Tuan Van Nguyen's (02) Motion to Suppress Tracking Device [Doc. No. 296]; Defendant Timothy Quang Tran's (04) Motion to Sever Defendants Pursuant to Federal Rule of Criminal Procedure 14 [Doc. No. 220], Motion to Suppress Search Warrant Evidence [Doc. No. 221], and Motion to Suppress Statements [Doc. No. 222]; Defendant Kevin Dinh Phan's (05) Motion for Separate Trials [Doc. No. 269], and Motion to Suppress Evidence Obtained by Illegal Search and Seizure [Doc. No. 270]; Defendant Tuan Ngoc Pham's (07) Motion to Suppress Communication Intercepted by Wiretap [Doc. No. 253], Motion to Suppress Statements, Admissions, and Answers [Doc. No. 254], Motion for Severance, or in the Alternative, to Join Motions of Co-Defendants [Doc. No. 255], and Motion to Suppress Search Warrant Evidence [Doc. No. 256]; Defendant Vinh Xuan Hoang's (12) oral motion to suppress evidence from search and seizure; Defendant Phung Duc Hoang's (13) Motion to Suppress Evidence Obtained Through Illegal Search and Seizure [Doc. No. 285], and Motion for Suppression of Statements [Doc. No. 227]; and Defendant Phuong The Cong's (15) Motion for Severance of Defendants [Doc. No. 289][1].

_____

[1] Defendant Phuong The Cong (15) brought two additional suppression motions in this case, a Motion to Suppress Evidence Obtained Through Illegal Search [Doc. No. 290], and a Motion to Suppress Confessions, Admissions or Statements Made in the Nature of Confessions Made by the Defendant [Doc. No. 288]. Because this Court heard testimony on those motions in a later

This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.[2]

## I. BACKGROUND

The Government filed an Indictment against Defendants on July 6, 2009, charging all Defendants with Conspiracy to Manufacture Marijuana. [Doc. No. 36]. The Indictment alleges that from January to June 2009, the defendants conspired to manufacture 1,000 or more marijuana plants.

This Court held a pre-trial motions hearing on September 1, 2009. Drug Enforcement Agency (DEA) Special Agent Shelly Howe testified at the hearing on behalf of the Government. Defendant Timothy Quang Tran (04) testified at the hearing in his defense. The Court received one exhibit into evidence – Government Ex. 1: Affidavit of Task Force Officer Anthony Fletcher. This matter is set for trial before United States District Chief Judge Michael J. Davis on December 1, 2009.

## II. FACTS

The following facts are taken from the Indictment [Doc. No. 36], Gov't Ex. 1, and testimony at the hearing on September 1, 2009. On June 30, 2009, DEA agents executed search warrants at more than twenty residences and businesses located throughout the Twin Cities metro area.[3] At six of these residences, officers found active indoor marijuana cultivation or "grow operations," including marijuana plants, lighting and other equipment. The power in these residences was allegedly stolen by tapping into the electrical panel before the meter. In three

---

hearing on September 11, 2009, those motions will be addressed in a separate Report & Recommendation.

[2] The Court has addressed Defendants' non-dispositive motions in a separate Order.

[3] Although more than 20 locations were searched on June 30, 2009, the defendants only challenge searches at seven locations. This Report & Recommendation will only include general facts related to an alleged marijuana growing organization and facts specific to the locations that are being challenged.

other residences, investigators found evidence of dismantled grow operations. Seven Defendants now challenge the searches at seven of the locations.

### A.    Information Leading to the Investigation

In April of 2008, members of the West Metro Drug Task Force and DEA Group 72 concluded an investigation into a large group of Vietnamese persons involved in indoor marijuana growing operations. Eventually nine people were sentenced in United States District Court as a result of that case. Tung Thanh Nguyen was convicted as a leader and organizer in that case. Tung Nguyen is the brother of Defendant Tuan Van Nguyen.

Through criminal history checks, Officer Fletcher learned that Tuan Van Nguyen was arrested at an indoor marijuana growing operation in 2005 in Brooklyn Center, where 572 marijuana plants were seized. Nguyen was again arrested in April 2007 at a house in Oakdale where 1,272 plants were seized. A month later in May 2007, Nguyen was arrested at a house where 1,000 marijuana plants were seized.

A number of "sources of information" ("SOI") provided information to Officer Fletcher and his co-case agent, Sergeant Todd Boelter.[4] On an undisclosed date, the first SOI, "SOI #1" told the officers that a group of Asian/Vietnamese persons were operating marijuana grow houses in the Twin Cities, including individuals named "Timity" a/k/a Trung Hoi, "Kiet" a/k/a "Kevin" and an individual named "Huan" who was the father-in-law of Tuan Nguyen. Specifically, the informant stated that "Timity" and "Kevin" had a marijuana grow operation near a fire station at 1565 Quasar Court, Lake Lane, Wisconsin. Officer Fletcher identified the person known as "Huan" as Defendant Nhuan Van Nguyen, the father-in-law of Defendant Tuan Nguyen. Nhuan Van Nguyen has a number of children. One daughter, Lien Nguyen, is married

---

[4] The affidavit does not detail any information about the identities or reliability of the SOIs, such as, whether the SOIs had provided corroborated information to law enforcement officers previously, or whether the SOIs were citizen informants or professional informants.

to Defendant Timothy Tran and Thuy Nguyen is married to Defendant Tuan Nguyen. Officer Fletcher believed that a third daughter, Xuan Nguyen, was being used to obtain properties and apartment rentals for the drug-trafficking organization.

Officer Fletcher and Sergeant Boelter also met with a second SOI, "SOI #2". SOI #2 reported that an individual named Cuong had many indoor growing operations in the Twin Cities and that Cuong had several brothers and a large family that assisted him in growing marijuana. According to the SOI, Cuong was "the big boss" and he came from Louisiana. SOI #2 also reported that Cuong lived by a water tower and a school in Brooklyn Center and that Cuong had a brother who operated a marijuana grow house near South St. Paul.

SOI #2 met with Officer Fletcher and Sergeant Boelter on a second occasion and provided additional information. At that time, SOI #2 reported that Cuong and members of his "group" used a residence at 7237 Bryant Avenue North, Brooklyn Center. Additionally, SOI #2 stated that a house at 816 Pleasant Avenue, in St. Paul Park possibly contained an indoor growing operation and that a vehicle with MN plate #KUG-059 was seen going to the house. SOI #2 further reported that an individual named "Tien Pham" recruited family members from Iceland to grow marijuana.

On another separate occasion, SOI #2 identified Cuong from photos as Defendant Johnny Cuong Tran. The informant also identified other relatives of Johnny Tran's as individuals involved in growing marijuana: two brothers, Defendants Kenny Tran and Dat Tran; and a cousin, Defendant Timothy Quang Tran. SOI #2 also identified Defendant Annie Huyen Vu as someone who worked for Johnny Tran and who had an apartment located in New Hope and also lived at 7472 Louisiana Avenue in Brooklyn Park. According to the informant, Johnny Tran used Defendant Annie Vu's address to register vehicles.

A third SOI provided information to Officer Fletcher that certain members of this marijuana growing group had moved from their large residential multi-story homes to apartments and townhomes in order to construct indoor-marijuana grow operations in the basements of their residences.

Officer Fletcher and Sergeant Boelter learned that 1565 Quasar Court, Lakeland, MN was owned by Defendant Kevin Dinh Phan and that Phan also owned 12198 Coral Sea Street NW, Blaine and 20473 150th Street NW, Elk River (Big Lake Township). From surveillance and "other checks," Officer Fletcher learned that Defendant Phan worked at Honeywell earning $3,300 per month. Based on his experience, Officer Fletcher averred that it is extremely unusual for someone making $3,300 per month to own three large residential homes with mortgages in excess of $1,000,000.00. The three homes were purchased within four months of each other between May of 2006 and August 2006.

Vehicle checks showed that Defendant Phan shared a vehicle with Defendant Johnny Tran, which was registered at 5625 Boone Avenue, #213, New Hope. Defendant Phan's driver's license listed his residence at 12198 Coral Sea Street NW, Blaine. Defendant Johnny Tran registered a different vehicle and his driver's license to 5625 Boone Avenue, #213, New Hope as well. Defendant Annie Vu registered a white Toyota SUV with MN license plate #UGE-476 to the same New Hope address.

Sergeant Boelter met with a fourth SOI who stated that Vinh Hoang, an Asian male approximately 33 years old and nicknamed "Vinny," grew and sold marijuana and sold ecstasy. SOI #4 further provided that "Vinny" had other Vietnamese persons, including relatives, growing marijuana for him. Additionally, SOI #4 told Sergeant Boelter that Vinny said he bought houses in the names of third-parties, he would pay the mortgages, and the individuals

would then live rent-free as long as they grew marijuana in the basement. The informant provided that "Vinny" lived in Brooklyn Park and drove a white Honda 4-door vehicle and black Honda 4-door vehicle. According to SOI #4, Vinny often carried between $10,000 and $20,000 in cash and often gambled at Mystic Lake Casino. SOI #4 identified "Vinny" as Defendant Vinh Xuan Hoang from a photograph. A vehicle and license check on Defendant Vinh Xuan Hoang showed his license and a vehicle registered at 7472 Louisiana Avenue North, Brooklyn Park. A Lexis Nexis Law Enforcement database check showed that Vinh Xuan Hoang's brother is Defendant Phung Duc Hoang. While Defendant Phung Duc Hoang's driver's license information showed a Mankato address up until 2008, he had owned a house since October 2006 at 12812 Avocet Street NW in Coon Rapids.

Officer Fletcher also learned that people involved in indoor marijuana growing operations had been using open windows on upper levels of their grow houses to vent the hot and humid air from the grow operation. In the past, marijuana growing operations would install after market vents on the roofs of grow houses and funnel air through attics and out through roof vents. Because marijuana growers know that law enforcement used the identification of after-market venting on roofs to spot grow houses, growers had ceased using roof vents.

### B.    The Investigation

Based on the information from the informants and from vehicle and driver's license checks, officers conducted an investigation into an alleged marijuana manufacturing organization from February through June 2009. According to Officer Fletcher's affidavit, "officers have conducted surveillance of suspects and their vehicles, which has led to the discovery of residences, stash pads, grow houses and locations being used by this organization."

Officers began surveillance at 7472 Louisiana Avenue, Brooklyn Park, owned by

Defendant Vinh Hoang and Vivian Hoang, believed to be Vinh's wife. Defendants Vinh Hoang and Phung Hoang were seen at this address, along with Vivian Hoang and Defendant Annie Vu. Surveillance followed Defendants Phung Hoang and Vinh Hoang on multiple occasions to and from 12812 Avocet Street, Coon Rapids, a suspected marijuana grow house operated by Phung Hoang and 7472 Louisiana Avenue. Officers observed Annie Vu and Vivian Hoang's vehicles at the Avocet Street address.

Officer Fletcher believed that 7237 Bryant Avenue, Brooklyn Center, was being utilized as a meeting place and marijuana distribution point for the organization. Surveillance showed Defendant Annie Vu coming and going between 7237 Bryant Avenue, Brooklyn Center and 10106 Yates Avenue North, Brooklyn Park. On many occasions Defendant Vu was seen traveling with Defendants Johnny Tran, Hoa Tran, and Phung Hoang at Yates Avenue.

On May 28, 2009, shortly after the arrival of Defendant Johnny Tran, officers observed Annie Vu arrive at 7237 Bryant Avenue North and carry a large cardboard box into the garage and leave. Later, a white Escalade with an Asian male matching the description of Defendant Timothy Tran driving, arrived at the location and drove into the garage. The driver later left the residence carrying a red duffle bag out of the garage. Officers then observed the Escalade leave and park in a parking lot away from the residence. While the vehicle was unattended, an Asian male arrived in a different vehicle and went into the Escalade and retrieved the red duffle bag. Minnesota State patrol then conducted a traffic stop of the vehicle that picked up the red duffle bag. Troopers seized three pounds of freshly harvested high-grade marijuana inside the red duffle bag. Officers continued to watch the Escalade after the transaction and followed it to 1345 Preston Lane, Shakopee, a house used by Defendant Timothy Tran.

While performing surveillance at 7237 Bryant Avenue, officers witnessed Defendants

Kenny Tran, Johnny Tran, and Hoa Tran arrive and leave the residence, whereupon they were followed to 20473 150th Street NW, Elk River, another suspected marijuana grow house owned by Defendant Kevin Phan. Defendant Annie Vu was also seen arriving at the 20473 150th Street location.

Surveillance followed Defendant Thai Ngo to 1565 Quasar Court, Lakeland (a suspected marijuana grow house), also owned by Defendant Kevin Phan. Officers executed a traffic stop on Defendant Ngo's vehicle after leaving the residence. The affidavit does not indicate what, if anything, was seized as a result of the traffic stop. Defendant Ngo was arrested on a felony narcotics warrant stemming from the discovery of an indoor marijuana growing operation in Blaine, MN on April 2, 2008 that contained 298 marijuana plants. Defendant Timothy Tran was also seen arriving at Quasar Court and parking in the garage. Vehicles used by Ngo have been seen at 7427 West 144th Street, Savage and 7197 Cambridge Road, Shakopee.

Surveillance conducted at 7237 Bryant Avenue, Brooklyn Center resulted in the observance of a vehicle belonging to Defendant Kevin Phan at that address. Surveillance followed this vehicle to Phan's residence at 12198 Coral Sea Street, Blaine.

### C.    7237 Bryant Avenue North

Although 7237 Bryant Avenue is not one of the searches challenged by the defendants, a discussion of this address gives context to the challenged addresses. Officers believed the address was being used as a meeting place and marijuana distribution point for the organization. Officers retrieved the garbage left for disposal at the Bryant Avenue location on numerous occasions. On April 3, 2009, the garbage contained: an empty box for four Kup-L-Tap connectors, a receipt from Viking Electric Supply dated March 23, 2009, for the purchase of Kup-L-Tap connectors, and several mailings and bills for Defendants Johnny Tran, Kenny Tran,

and residents of the house. According to Officer Fletcher, Kup-L-Tap connectors are used to splice into power lines to steal power from electric companies.

On April 10, 2009, Sergeant Boelter collected the garbage at this address and found the following: an empty six gallon container for Floramico grow nutrient, phone statements, bank statements, vehicle repair tickets, and airline and baggage claim receipts for Defendants Kenny Tran, Johnny Tran and other residents of the house.

The next week, on April 17, 2009, Officer Fletcher and Sergeant Boelter confiscated the trash at 7237 Bryant Avenue and collected the following: three large plastic garbage bags (one white and two black) containing potting soil, fertilizer, and 87 root balls from marijuana plants, several white vacuum seal bags with marijuana residue, handfuls of marijuana leaves and stems and several marijuana buds (which field-tested positive for THC), a Home Accents indoor digital timer, a receipt for Home Depot in Fridley, and miscellaneous bills for the residence.

The next garbage search, conducted on April 24, 2009, recovered the following: three large garbage bags filled with dirt and 77 marijuana root balls, two large garbage bags filled with harvested marijuana stalks and stems, energy bills, and phone and bank statements for residents at the address.

The last garbage search conducted at 7237 Bryant Avenue North occurred on June 5, 2009 and recovered the following: a gallon size Ziploc bag with approximately 126 grams of marijuana, a vacuum sealed bag with approximately 106 grams of marijuana, a shoulder strap for a red bag, 50 marijuana root balls, two Thomas & Betts split bolt connectors, a $1,000 money wrapper, financial account statements for Peter Tran, Thinh Tran, Defendant Hoa Tran, and Defendant Kenny Tran, an empty box for 12" x 25' black insulated ducting, and an empty box for a 20 inch box fan.

### D.     1565 Quasar Court South, Lakeland, MN 55043

In his affidavit, Officer Fletcher stated that he and Sergeant Boelter believed the location to contain an indoor marijuana growing operation, and therefore performed surveillance at this location.  Surveillance showed very little traffic to and from the address.  Officers observed that the window coverings of the upper windows were mostly closed, "in an attempt to conceal movement inside the address."  Additionally, officers observed several vehicles not registered to the address arrive, remotely enter and park in the garage, stay for a period of time, leave and immediately shut the garage door.  On an undisclosed date, Sergeant Boelter observed a window open in the rear of the home, from which he could hear a loud fan coming from the window.  Above this window, the frost was melted, while on the rest of the home Sergeant Boelter observed a thick white frost.  Sergeant Boelter also smelled the odor of marijuana coming from the house.  Officer Fletcher stated that this information was consistent with the SOI information they received on the new way of venting grow houses.

On April 30, 2009, Officer Fletcher collected the recycling items left at the curb of the house.  In the recycling, he recovered:  an envelope with detailed handwritten directions explaining the set-up of three rooms, detailed timer systems, and the stages in a marijuana grow operation, two large empty wire spools labeled "Carol brand black 90c 300 Volt 250 feet of black wire," a box for a Honeywell dehumidifier, a white face mask, a box for a Flotec heavy duty professional ¼ horsepower utility pump, a cardboard box for Safergro organic mildew cure fungicide (1 quart), and mailings for Defendant Kevin Phan and "resident" at the 1565 Quasar Court South address.

On June 3, 2009, officers collected the trash left for disposal at the 1565 Quasar Court South address.  The trash collected contained the following items:  141 harvested marijuana root

balls with intact root systems, a small bag of marijuana leaves and stems which field-tested positive for the presence of THC, an empty box of Rival seal-a-meal vacuum packaging (used to package and harvest marijuana), and two large bags of Sunshine professional growing mix. Finally, Xcel Energy confirmed that power was being stolen at this address.

### E.       20473 150th Street NW, Big Lake Township (Elk River), MN 55330

The house at 20473 150th Street NW is also owned by Kevin Phan.  In his affidavit, Officer Fletcher stated that, on several occasions, he walked along the street in front of the house and smelled fresh marijuana coming from the direction of the residence.  According to Officer Fletcher, the shades of the home were shut on most of the windows at the address and vehicle traffic always remotely entered the residence through the garage.

Officers collected the trash at the residence on March 16, 2009, and recovered the following:  several dozen sections of two-sided black and white plastic tarp sheets cut into large pieces with soil stains, which, according to Officer Fletcher is the type of plastic used to create separate rooms within a grow operation and to act as false walls, an empty large white Perlite brand 4 cubic foot/113 Liter horticultural potting soil bag, a mailing addressed to "resident" at 20473 150th Street NW, approximately 20 pairs of white latex gloves with marijuana and soil residue on them, a white face mask, several marijuana stems, leaves, and buds, empty blue plastic cups with dirt and soil residue used for measuring, and two pairs of men's sandals in two different sizes, covered in dirt and soil.  The next week, on March 23, 2009, Officer Fletcher again collected the trash at 20473 150th Street NW and recovered a plastic latex glove and white facemask.

The trash at 20473 150th Street NW was again collected on April 5, 2009.  Officers recovered a document in Kevin Phan's name stating the home's market value and tax

assessment. In a separate trash bag, which contained only items related to a marijuana grow operation, officers recovered two large 1000 watt high-intensity discharge light bulbs, several dozen used white latex gloves with marijuana residue on the fingertips, two white facemasks, two empty boxes of Performance Select 100 count latex gloves, two empty rolls of vacuum seal wrapping, one empty box of Food Saver 11 inch vacuum packaging rolls (two count), and a large black plastic garbage bag with marijuana residue and several marijuana stems and leaves. Finally, Conexxus Energy confirmed that power was being stolen at the house.

**F.    12198 Coral Sea Street NW, Blaine, MN 55449**

Officer Fletcher retrieved the trash from 12198 Coral Sea Street NW, on March 19, 2009, and recovered the following: a US Bank visa card in the name of Kevin Phan, a US Bank mailing addressed to Kevin Phan at 12198 Coral Sea Street NE, Blaine, a torn-up TCF Bank withdrawal slip in the amount of $2,000.00, an empty envelope for Honeywell Corporation, CVS Pharmacy prescription paperwork for Kevin Phan dated March 14, 2009, at 12198 Coral Sea Street NE, and a handwritten note with insurance information regarding the address owned by Kevin Phan at 1565 Quasar Court South, Lake St. Croix Beach, MN 55043.

Another trash search was conducted at the Coral Street address on April 2, 2009. In this search, officers confiscated the following: wire transfer receipts, handwritten notes with addresses on them, including 20473 150th Street NW, Big Lake and Lakeland, Lot 2, Block 1, and Wood Lakes of Lake St. Croix Beach, Washington, MN (actually 1565 Quasar Court, Lakeland), a Countrywide home loan statement addressed to Kevin Phan at 12198 Coral Sea Street in Blaine, and a Menards receipt.

### G.     7197 Cambridge Road, Shakopee, MN 55379

The house at 7197 Cambridge Road, Shakopee, MN 55379 is owned by Lien Nguyen, the wife of Defendant Timothy Tran.  In his affidavit, Officer Fletcher stated, "[y]our affiant believes that the owners of this house have moved a short distance away (within walking distance) and converted the house to an indoor marijuana grow operation."  Officer Fletcher performed surveillance on the address and observed the address had almost no vehicle traffic or normal resident movement.  When there was vehicle traffic, it was sporadic and vehicles parked in the garage.  Vehicles and persons believed to be involved in marijuana growing were seen at the address, including Defendants Timothy Tran, Tuan Pham and their vehicles and a vehicle registered to Xuan Nguyen, the daughter of Nhuan Nguyen (being used by Defendant Thai Ngo).

During surveillance, officers noticed that, in the early morning hours, certain areas of the roof contain unusual z-patterns where portions of the roof were absent of moisture and other areas of the roof had natural amounts of moisture and condensation.  According to Officer Fletcher, it is unusual for portions of a roof to be absent of moisture without the presence of sunlight in the early morning hours after a night of normal frost.  Additionally, Officer Fletcher noted that all windows on the house were closed with blinds covering the windows.

On May 27, 2009, Officer Fletcher collected the trash at 7197 Cambridge Road, Shakopee.  Inside the trash, Officer Fletcher collected three large pieces of black two-sided reflector paper (approximately 75 inches tall by 70 inches wide), with large round holes cut in the middle, mailings and documents for Timothy Tran for the residence, and mailings with a forwarding address of 1345 Preston Lane, Shakopee.

### H.      1345 Preston Lane, Shakopee, MN 55379

A vehicle and driver's license check on Defendant Timothy Tran showed a vehicle listed to 7197 Cambridge Road, Shakopee.  Defendant Timothy Tran's driver's license had recently been re-registered to 1345 Preston Lane, Shakopee from 7197 Cambridge Road.  Several vehicles including a white Ford van with MN Plate #JGB-941 were registered to Timothy Tran at 1345 Preston Lane.  Officer Fletcher also stated in his affidavit that "[o]fficers have seen [Defendant] Tuan Nguyen driving [Defendant] Timothy Tran's white van to suspected grow houses."

### I.      7472 Louisiana Avenue North, Brooklyn Park, MN 55428

On March 2, 2009, Sergeant Boelter collected the trash at 7472 Louisiana Avenue North and found the following:  a marijuana stem, receipts for two quarts of root stimulator, and mailings for the address.  A subsequent garbage search on May 18, 2009, recovered:  15 white and black garbage bags filled with dirt, several marijuana plants and leaves, two bags of marijuana, which field tested positive for THC, an empty box for Ziploc bags, a scissors, latex gloves, and 453 marijuana root balls with intact root systems.

### J.      12812 Avocet Street, Coon Rapids, MN 55448

During the winter months in "sub-zero temperatures" Officer Fletcher and Sergeant Boelter observed certain areas of the roof at 12812 Avocet Street to be absent of snow and to be emitting what appeared to be wet heat that quickly turned to frost around the vents.  Officer Fletcher noted that the amount of frost around the vents was "extraordinarily excessive."  Officers also noticed unusual melting and z-patterns on certain areas of the roof.  The lights both inside and outside the house appeared to be on timers and had turned off and on at the same time every day.  Vehicles not registered to the address had remotely parked in the garage.

On January 6, 2009, officers collected the trash from 12812 Avocet Street and found the following: an empty box for 1,000 Jiffy-7 peat pellets, an empty box for a Vortex 8 inch Inline Fan bought from Brew & Grow, an empty box for a Simer 1/3 HP utility pump, an empty box for a ¼ HP Barracuda utility pump, numerous latex gloves, a pizza box delivered to 7472 Louisiana Avenue North, mailing for Phung Hoang at 12812 Avocet Street NW, a handwritten drawing for installing a new 8 inch blower into a venting system, a package for a soil thermometer, and many mailings for the address and for 7472 Louisiana Avenue. Two weeks later on January 20, 2009, the trash collection contained the following: numerous latex gloves, a receipt from Lowe's dated December 29, 2008 for a quart of Root Stimulator, a receipt from Home Depot dated January 1, 2009, for Takeroot, a Centerpoint Energy bill and Conexxus Energy Bill for Phung Hoang at 12812 Avocet Street NW, and additional mail for that address.

On March 3, 2009, officers again collected trash at the Avocet Street address and confiscated the following: an empty box for an Ortho EZ pump multi-purpose sprayer, numerous latex gloves with dirt and a green leafy substance on them, and mailings for that address.

The trash collected from the Avocet address on April 14, 2009, contained: a large plastic baggie with a label for "The Original Can Filter" brand industrial size carbon air filter, which Officer Fletcher stated was used in marijuana grow operations, an empty blue box for a 20 inch Cyclone power air circulator fan, several large pieces of pink insulation typically used in walls and attics, several mailings addressed to Phung Hoang at 12812 Avocet Street, three blue face masks, six pairs of gray latex gloves with marijuana residue, one empty bag for a 24 inch by 84 inch bright aluminum screen, an empty container for one Mainstay cushion bent grip pair of scissors, two marijuana leaves, partial packaging for a kit from 1 Stop Gardens, a torn out page

from the yellow pages phone book for gardens, gardening services and a garden retail store, a receipt from Lowe's dated December 10, 2008 for items including a 20 inch Cyclone Pivot fan, a three speed box fan, a 32 ounce spray bottle, a 48 ounce Quick Star bottle, and a quart bottle of root stimulator, and a Menard's receipt for a ¼ HP utility pump, a humidifier, an 8 inch spade, and a 24 inch by 84 inch piece of bright aluminum. Conexxus Energy also confirmed that power was being stolen at this location.

### K.    Statements Made By Timothy Tran During Execution of Search Warrant

On June 30, 2009, approximately 19 agents and officers executed the warrant issued for the residence at 1345 Preston Lane, Shakopee, MN 55379. One of the agents executing the warrant was DEA Special Agent Howe. At the time of the search, Agent Howe was an experienced agent with a background in enforcing narcotics laws and investigating narcotics violations.

When agents entered the residence, they encountered four individuals: Defendant Timothy Tran, his wife, and his wife's parents. All four of these individuals were handcuffed with their hands behind their back. Because the warrant was executed at approximately 7:00 a.m., Defendant Tran had been sleeping at the time the agents entered the home. Therefore, Defendant Tran testified that he was only wearing shorts without a shirt at the time he was handcuffed. At the suppression hearing, Agent Howe could not recall what Defendant Tran was wearing at the time of the warrant execution.

While other officers were conducting the search, Agent Howe asked Tran questions required for the DEA's Personal History form. Agent Howe testified that DEA agents are required to fill out the Personal History form for every individual they encounter during any execution of a search warrant. The form is one page and contains approximately 50 basic

background questions, such as, the individual's date of birth, phone number, address, sex, hair color, eye color, occupation, employer, and the like. According to Agent Howe, the questions on the personal history sheet are similar to booking questions. Defendant Tran was not given Miranda warnings before Agent Howe asked him the questions on the booking sheet. The interaction was not recorded. Agent Howe testified that she did not interview Defendant Tran, and in fact, she was directed by the case agents not to interview anyone during the searches. The Government has indicated that it does not intend to admit Defendant Tran's responses to the personal history questions in its case-in-chief. The Government did not provide Defendant Tran with a copy of these booking questions because the notes are discarded after the information is entered into the computer. However, the Government has detailed what questions are found on the personal history form.

Although English is not Defendant Tran's first language, Defendant Tran understood Agent Howe's questions, (asked in English), sufficiently for him to respond in English. When Agent Howe asked the other individuals in the room the same Personal History form questions, Defendant Tran acted as a translator and assisted the other individuals with providing the information requested by Agent Howe.

During the questioning of Defendant Tran's wife, Agent Howe testified that she asked some questions of Tran and his wife about the Cambridge Road address. Agent Howe stated that she asked these questions because it was unclear where Defendant Tran's wife resided because she appeared to be living at the Preston Lane address, but her driver's license provided her address as 7197 Cambridge Road. Agent Howe did not read Defendant Tran's wife Miranda warnings before asking her the questions about the Cambridge Road residence.

Approximately one hour after the search began, agents uncovered a significant amount of money hidden in the home's freezer. DEA policy provides that an individual in custody during a search where money is found is immediately given <u>Miranda</u> warnings. Based on this policy, Agent Howe testified that Defendant Tran was given <u>Miranda</u> warnings as soon as the money was found using a <u>Miranda</u> card she obtained from another agent. In contrast, Defendant Tran testified at the hearing that Agent Howe asked him approximately three questions about the found money before reading him his <u>Miranda</u> rights, including whether the money belonged to him. While the parties dispute when the <u>Miranda</u> warnings were given, it is undisputed that, after Defendant Tran was read his <u>Miranda</u> rights, he agreed to waive those rights and speak to Agent Howe. Defendant Tran never asked for a lawyer, nor asked to stop the interview.

III.  **<u>DISCUSSION</u>**

A.  **<u>Motions to Suppress Evidence</u>**

Defendants Timothy Tran, Kevin Phan, Tuan Pham, Phung Hoang and Vinh Hoang all contend that evidence seized as a result of the search warrants issued in this case must be suppressed for lack of probable cause [Doc. Nos. 221, 256, 270, 285 and oral motion]. After reviewing the warrants and the supporting affidavit, the Court concludes that the warrants are adequately supported by probable cause and/or are saved by the <u>Leon</u> good-faith exception.

1.  **Standard for Probable Cause for Search Warrants**

When there is no evidence presented to a magistrate judge regarding a search, the probable cause determination is made only on information which is found within the four corners of the affidavit supporting the warrant. <u>United States v. Hudspeth</u>, 525 F.3d 667, 674 (8th Cir. 2008); <u>United States v. Olvey</u>, 437 F.3d 804, 807 (8th Cir. 2006). "If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair

probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established." Hudspeth, 525 F.3d at 674 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Wyoming v. Houghton, 526 U.S. 295, 302, 119 S. Ct. 1297, 1301 (1999) (quoting Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978)). There must also be a nexus between the items to be seized and criminal behavior. Warden v. Hayden, 387 U.S. 294, 306-07 (1967).

A court "may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit." United States v. Carlson, 697 F.2d 231, 238 (8th Cir. 1983); see also United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000). Likewise, law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant. United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000). An officer's "averment based upon his experience that drug traffickers often keep in their residences records of their illicit activity, large amounts of cash, assets purchased with the proceeds of drug transactions, and guns to protect their drugs and cash, [can provide a] judge with a substantial basis for finding probable cause to search [the defendant's] residence." United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994), cited in United States v. Walker, 324 F.3d 1032, 1038 (8th Cir. 2003).

## 2. The Leon Good-Faith Exception

Even if a search warrant is not supported by probable cause, a court may deny a suppression motion if the good-faith exception applies. Under the good-faith exception to the exclusionary rule, "evidence seized pursuant to a search warrant . . . that is later determined to be

invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007); United States v. Ross, 487 F.3d 1120, 1122 (8th Cir. 2007) (both citing United States v. Leon, 468 U.S. 897, 923 (1984)). The Leon good-faith exception is lost, however, when an officer relies on a warrant for which the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923; Ross, 487 F.3d at 1122.

When an affidavit fails to establish a nexus between a residence and contraband, it still would not be "entirely unreasonable" for the executing officer "to believe that such an inference was permissible." United States v. Carpenter, 341 F.3d 666, 671 (8th Cir. 2003); see also Proell, 485 F.3d at 432. Courts must apply the good faith exception "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Leon, 468 U.S. at 920. Ordinarily, "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Id. at 921.

### 3. Staleness

Probable cause must "exist at the time of the search and not merely at some earlier time. United States v. Jeanetta, 533 F.3d 651, 654 (8th Cir. 2008); United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005). "There is no bright-line test for determining when information is stale . . . Time factors must be examined in the context of a specific case and the nature of the crime under investigation." United States v. Perry, 531 F.3d 662, 666 (8th Cir. 2008) (quoting United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007)). "[T]he lapse of time is least

important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." United States v. Gleich, 397 F.3d 608, 613 (8th Cir. 2005) (quoting United States v. Horn, 187 F.3d 781, 786 (8th Cir. 1999)). When more recent information corroborates information that is stale, a court may conclude the search is supported by probable cause. United States v. Kattaria, 553 F.3d 1171, 1176 (8th Cir. 2009).

In situations involving on-going drug conspiracies, courts have recognized that intervals of several months will not give rise to a claim of staleness. United States v. Pruneda, 518 F.3d 597, 604 (8th Cir. 2008) (rejecting claim that month-old information was stale in context of an ongoing drug conspiracy); United States v. Smith, 266 F.3d 902, 905 (8th Cir. 2001) (holding that "[i]n investigations of ongoing narcotic operations, intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale."); United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998) (same). In cases specifically involving marijuana growing operations or marijuana trafficking, older information is not necessarily stale because of the ongoing nature of the crimes. United States v. Mims, 567 F. Supp. 2d 1059, 1070 (D. Minn. 2008); see also United States v. Turner, 431 F.3d 332, 337 (8th Cir. 2005) (finding information regarding marijuana trafficking that was almost a year old was not stale when corroborated by additional, more recent evidence).

### 4. 1565 Quasar Court South, Lakeland, MN 55043

Defendant Kevin Phan challenges the search at Quasar Court arguing that the information set forth in the affidavit was insufficient and/or too stale to support a finding of probable cause to permit the search.

This Court finds that Officer Fletcher's affidavit is sufficient to support a finding of probable cause that contraband or evidence of drug violations would be located at the Quasar

Court rental property. A source of information told investigators that an individual named Kevin had a marijuana grow operation near a fire station at 1565 Quasar Court, Lake Lane, Wisconsin. Investigators later corroborated the information by confirming that Defendant Kevin Phan indeed owned property at a street address of 1565 Quasar Court, although this address was located in Lakeland, MN rather than Lake Lane, Wisconsin. United States v. Warford, 439 F.3d 836, 841 (8th Cir. 2006) (holding that even where informant does not have a track record of supplying reliable evidence, the information may be considered reliable if it is corroborated by independent evidence). Defendant Ngo, who had been arrested on narcotics charges in connection with a marijuana grow operation, was seen at the Quasar Court address.

Officers conducted surveillance on the property and saw an open window with a fan vent and, near the window, the frost on the roof was melted. As stated in Officer Fletcher's affidavit, this frost melting is consistent with the venting of the warm humid air produced in a marijuana growing operation. More significantly, Sergeant Boelter smelled marijuana coming from the house. Admittedly, this information is undated, although presumably it occurred in winter or late spring if there was frost on the roof. Nevertheless, even if this information was months old, it was corroborated by subsequent surveillance and trash searches.

In late April and early June, approximately one month before the search, Officers conducted garbage searches and seized items consistent with an indoor marijuana growing operation: instructions and equipment for setting up a marijuana growing operation, dehumidifiers, fungicide, materials for packaging marijuana, and growing mix. More significantly, officers recovered, in the June 3 trash search, 141 harvested marijuana root balls with intact root systems and a bag of marijuana leaves and stems. Finally, Xcel Energy confirmed that power was being stolen at the address.

The evidence in the affidavit documents a continuing criminal enterprise for growing marijuana in a number of locations. Under the circumstances, the evidence sought was the type of property that would likely have remained on the premises because of the on-going nature of the crime. Further, the confiscation of the marijuana root balls and stems and leaves occurred less than a few weeks before the warrants were issued, and this fact corroborated older information. The information in the affidavit was not so stale as to invalidate the warrant as a matter of law. Likewise, the evidence in the affidavit suggesting that there was venting of humid air and the stealing of power is consistent with a marijuana grow operation. United States v. Olson, 21 F.3d 847, 850 (8th Cir. 1994). Accordingly, the Court discerns no basis to conclude that probable cause was lacking and therefore recommends that Defendant Phan's motion to suppress be denied.

### 5.    20473 150th Street NW, Big Lake Township (Elk River), MN 55330

Defendant Kevin Phan moves to suppress the evidence seized at the 150th Street location, again asserting that the information contained in the affidavit was insufficient and/or too stale to support a finding of probable cause to support the search warrant.

During surveillance, officers repeatedly saw a number of the defendants, all of whom had been connected to the marijuana growing operation, travel to and from the 150th Street residence. On an unknown date, Officer Fletcher smelled marijuana coming from the residence. Trash searches, in March and April of 2009, recovered materials consistent with a marijuana grow operation: tarp sheets with soil stains, a bag from potting soil, latex gloves with marijuana residue, marijuana stems, leaves, and buds, face masks, high-intensity discharge light bulbs, empty rolls of vacuum seal wrapping, and a garbage bag with marijuana residue and several marijuana stems and leaves. Additionally, Conexxus Energy confirmed that power was being

stolen at the house.

Again, the authorities were investigating whether defendants were engaged in an ongoing conspiracy to manufacture marijuana. Therefore, even the time lapse of a few months between the March trash search and the issuance of the affidavits is not fatal. Officers recovered evidence of marijuana manufacturing on three separate occasions, the latest confiscation occurring less than two months before the warrants were issued. There is nothing in the record to suggest that the suspects had terminated their illegal activities in the interim. Under these circumstances, the Court cannot conclude the information in the affidavit was stale. The Court's four-corners review of the affidavit supporting the warrant supports the conclusion that the warrant to search the 150th Street residence was supported by probable cause. This Court recommends that Defendant Phan's motion to suppress be denied.

### 6.     12198 Coral Sea Street NW, Blaine, MN 55449

Defendant Kevin Phan challenges a third search, the search of his residence at Coral Sea Street. Whether Officer Fletcher's affidavit provides sufficient probable cause to believe that evidence of criminal activity would be found at the Coral Sea address is a closer question. Although the information in the affidavit presents a more tenuous case of probable cause for the warrant, the Leon good faith exception to the exclusionary rule applies because the officers who executed the warrant relied in good faith on the existence of a valid warrant.

The affidavit provides that Defendant Phan owned the Coral Sea home and it was listed as his residence on his driver's license. The information from the SOI, which was corroborated by subsequent trash searches, indicated that other residences that Defendant owned were being operated as marijuana grow houses. Further, the garbage searches on March 19, 2009 and April 2, 2009, included handwritten notes connecting the Coral Sea Street address with both the grow

houses at Quasar Court and 150th Street. As the Government stated in its post-hearing brief, because there was probable cause to believe that marijuana growing operations were being operated at locations owned by Defendant Phan, there is probable cause to believe that evidence of those operations would be found at Phan's primary residence. (Government's Post-Hearing Response to Various Defendants' Motions to Suppress Evidence at 16).

Even if the affidavit did not provide sufficient probable cause for the search at the Coral Sea Street address, the executing officers' reliance on the warrant was objectively reasonable under Leon. Officer Fletcher's twenty-eight page affidavit provided extensive evidence of a large-scale and far-reaching marijuana manufacturing organization. The affidavit also detailed significant evidence of Defendant Phan's involvement in the criminal enterprise, including evidence suggesting other properties owned by Phan were being used as marijuana grow houses. Given the inference that an individual engaged in drug trafficking is likely to retain evidence or proceeds of such activity in his residence, the officers' reliance on the warrant was reasonable. The affidavit and warrant were not "so lacking in indicia of probable cause" as to make it "entirely unreasonable" for officers to rely on the warrant. Considering the totality of the circumstances, we conclude that it was objectively reasonable for the officers to rely on the validity of the search warrant and the Court recommends that Defendant Phan's motion to suppress be denied.

### 7.      7197 Cambridge Road, Shakopee, MN 55379

Defendants Tuan Pham and Timothy Tran move to suppress the evidence seized from the search at the Cambridge Road residence [Doc. Nos. 221 and 256]. The house at Cambridge Road is owned Defendant Timothy Tran's wife.

### i. Defendant Tuan Pham

At the hearing, Defendant Pham's counsel stated that the Cambridge Road search violated his Fourth Amendment rights because he was a "prior" resident of the house. The Court ordered that Defendant Pham submit a post-hearing brief outlining how, as a prior resident of the house, Pham had a reasonable expectation of privacy in the residence. Defendant Pham did not submit a post-hearing brief on this issue.

In order to have standing to challenge a search of a third-party's residence, the defendant must have a legitimate expectation of privacy in the location searched. Rawlings v. Kentucky, 448 U.S. 98, 106, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980); United States v. Perry, 548 F.3d 688, 691 (8th Cir. 2008). The defendant has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable. Perry, 548 F.3d at 691 (citing United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999)). Whether the defendant had a subjective expectation of privacy is a question of fact; whether an expectation of privacy was objectively reasonable is a question of law. Id. (citing United States v. Hayes, 120 F.3d 739, 743 (8th Cir. 1997)). Because he has not offered any facts or evidence showing that he has a subjective expectation of privacy in the Cambridge residence, Defendant Pham has not met his burden of establishing that he has standing to challenge the search. Moreover, an individual does not have an objective reasonable expectation of privacy in a former residence. United States v. Bolden, 545 F.3d 609, 620 (8th Cir. 2008) (citing United States v. Hoey, 983 F.2d 890, 892 (8th Cir.1993)). Therefore, this Court recommends that Defendant Pham's motion to suppress be denied.

### ii. Defendant Timothy Tran

Defendant Tran asserts that Officer Fletcher's affidavit does not support a finding of probable cause for a search of the Cambridge Road residence, owned by Defendant Tran's wife.

This Court disagrees.

Officer Fletcher's surveillance of the residence showed almost no vehicle traffic or normal resident movement. Vehicles and other defendants involved in marijuana growing were seen at the Cambridge Road address. More significantly, officers observed z-pattern melting on portions of the roof, consistent with procedures used to vent marijuana grow houses. Likewise, Officer Fletcher stated the windows in the home were always covered by blinds, which was a common way for marijuana growers to avoid detection from outsiders. The May 27, 2009, trash search recovered large pieces of reflector paper, which Officer Fletcher testified is used to create false walls in marijuana growing operations. Finally, an SOI stated that Defendant Timothy Tran was involved in the operation of the grow house at Quasar Court.

Based on the totality of the information, Officer Fletcher's affidavit detailing the roof venting and other indicia of marijuana grow houses supports the conclusion that evidence of marijuana manufacturing would be found at the Cambridge Road location. Even if the warrant was not supported by probable cause, the <u>Leon</u> good-faith exception would apply. Therefore, the Court recommends that Defendant's motion to suppress evidence seized as a result of the search be denied.

### 8. 1345 Preston Lane, Shakopee, MN 55379

Defendant Timothy Tran also moves to suppress the search at Preston Lane. Like the Coral Sea Street search, whether there was probable cause to support a search warrant for Preston Lane is a close question. Officers verified that Defendant Tran had recently listed his driver's license at 1345 Preston Lane and his vehicles were likewise registered to that address. Officers also connected the Preston Lane address to a seizure of marijuana. On May 28, 2009, officers observed an Asian male, matching the description of Defendant Tran, carry out a red

duffle bag and drive away from 7237 Bryant Avenue North in a white Escalade. Another male eventually obtained the red duffle bag and when officers seized the bag it contained three pounds of marijuana. Eventually, the white Escalade that had previously transported the red bag drove to the Preston Lane address.

The affidavit provided sufficient probable cause to search the Preston Lane address. Officers had information suggesting Defendant Timothy Tran was actively engaged in marijuana manufacturing. Less than a month before the warrant application, the Preston Lane address was connected to a significant drug seizure. Even if these facts were insufficient to establish probable cause, executing officers were reasonable in relying on the search warrant under Leon. Therefore, this Court recommends that Defendant Timothy Tran's motion to suppress be denied.

### 9. 7472 Louisiana Avenue North, Brooklyn Park, MN 55428

Defendants Phung Hoang and Vinh Hoang both assert that the affidavit did not establish probable cause to search the Louisiana Avenue address and that the warrant was based on stale information.

A SOI informed investigators that Defendant Vinh Hoang grew and sold marijuana and that he lived in Brooklyn Park. Officers corroborated that Vinh Hoang lived in Brooklyn Park at 7472 Louisiana Avenue and determined that Vinh Hoang's brother was Phung Hoang. Sergeant Boelter further confirmed that Vinh Hoang was operating a grow house at the Louisiana address through trash searches on March 2, 2009 and May 18, 2009. In the trash searches, Sergeant Boelter recovered: a marijuana stem, several marijuana plants, two bags of marijuana, root stimulator, and 453 marijuana root balls. These trash searches provided substantial evidence supporting the conclusion that contraband or evidence of narcotics violations would be found in the residence. The May 18 search, which included the marijuana plants and root balls, occurred

only six weeks before the warrant application. Even the March trash search, four months before the warrant application is not stale. As set forth *supra*., the on-going nature of the drug operation compels the conclusion that the information in the affidavit was not stale. In sum, the issuing judge had a substantial basis for concluding that probable cause existed to search the Louisiana Avenue residence. This Court recommends that Defendant Phung Hoang's and Vinh Hoang's motions to suppress be denied.

### 10.     12812 Avocet Street, Coon Rapids, MN 55448

Defendant Phung Hoang seeks to suppress the evidence seized at 12812 Avocet Street, arguing that there was not probable cause for the Avocet search, the warrant was based on stale information, and the affidavit contained a material omission.

### i.     Probable Cause and Staleness

There was ample evidence in the warrant application to support a finding of probable cause. During the winter months officers saw venting of heat at the residence consistent with marijuana grow houses. Further, officers conducted multiple trash searches at the residence and recovered equipment and supplies consistent with marijuana cultivation: fans, utility pumps, a drawing for installing a venting system, a soil thermometer, root stimulators, a carbon air filter, latex gloves with marijuana residue, marijuana leaves, and other gardening materials. Further, Conexxus Energy also confirmed that power was being stolen at this location. While the trash searches occurred several months before the warrant application, in January, March and April, because of the on-going nature of the drug offenses, the information from the trash searches is not stale. Officer Fletcher's affidavit contained ample evidence to support the conclusion that evidence of narcotics offenses would be found at the Avocet address. The Court, therefore, recommends that Defendant Phung Hoang's motion to suppress be denied.

### ii.     Material Omission

Defendant Phung Hoang also asserts that the evidence seized from the Avocet address should be suppressed because the affidavit contained a material omission, that is, information that while Defendant Phung Hoang owned the residence, the residence was occupied by another individual, Cong Nguyen.  Essentially, Defendant Hoang appears to seek a <u>Franks</u> hearing on the issue of whether Officer Fletcher intentionally omitted relevant facts from the affidavit he provided in support of the search warrant.  A request for a <u>Franks</u> hearing is a non-dispositive issue that the Court addresses in the accompanying Order.  As set forth in that order, the information regarding Mr. Cong Nguyen is not a material omission.

The fact that Mr. Cong Nguyen was not identified in the affidavit as the actual occupant of the Avocet residence does not suggest the warrant was without probable cause.  "Search warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized."  <u>Zurcher v. The Stanford Daily</u>, 436 U.S. 547, 555 (1978).  Accordingly, "the critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."  <u>Id.</u> at 556.  As the Court explained, a search warrant, unlike an arrest warrant, does not require the identification of "any particular person as the likely offender."  <u>Id.</u> at 557 n. 6 (internal quotation omitted).

The fact that Cong Nguyen was an occupant of the residence but was not identified in the affidavit is not a material omission.  The information in the affidavit provides ample probable cause that a marijuana grow operation was being operated at the address, regardless of who occupied the residence.  The Court recommends that Defendant Phung Hoang's motion to

suppress be denied.

### B. Motions to Suppress Statements

Defendants Johnny Tran, Timothy Tran, Tuan Pham, and Phung Hoang all move to suppress statements arguing their statements were taken in violation of their constitutional rights [Doc. Nos. 222, 227, 254, and 266].

### 1. Defendant Johnny Tran

Defendant Johnny Tran made a motion to suppress statements [Doc. No. 266]. The Government states that it is unaware of any statements made by Defendant Johnny Tran that it intends to introduce in its case-in-chief at trial. Therefore, this Court recommends that Defendant Johnny Tran's motion to suppress statements be denied as moot.

### 2. Defendant Phung Hoang

Defendant Phung Hoang moves to suppress the answers he gave to booking questions at the scene of the arrest [Doc. No. 227]. In response, the Government states that it does not intend to introduce Defendant's responses to booking questions in its case-in-chief. Based on the Government's representations, the Court recommends that this motion be denied as moot.

### 3. Defendant Tuan Pham

Defendant Tuan Pham moves to suppress statements on the grounds that his rights under Miranda and the Constitution were violated [Doc. No. 254]. In the pre-hearing briefing, the parties indicated they were in the process of determining if statements made at the time of Defendant Pham's arrest would be challenged or offered. Defendant Pham did not submit a post-hearing brief on this issue or in any way indicate to the Court the basis for his motion to suppress statements. Therefore, the Court recommends that Defendant Pham's motion to suppress be denied.

## 4.     Defendant Timothy Tran

Arguing that he was not properly given <u>Miranda</u> warnings, Defendant Timothy Tran moves to suppress two sets of statements, statements made in response to the personal history questions asked before the money was found and statements made in response to questions relating to the money found in the freezer.  Even though the Government does not intend to offer any statements made in response to the personal history questions, the Court will address those questions because Defendant Tran argues the earlier questions constituted custodial interrogation, the <u>Miranda</u> warnings were only given "midstream," and therefore, the continued questioning was improper.

### i.     Personal History Questions

Not all questions asked by the government of an individual in custody must be preceded by <u>Miranda</u> warnings.  There is an exception to the <u>Miranda</u> requirement for routine background questions or booking questions.  <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601 (1990) (holding routine background questions including name, address, height, weight, eye color, date of birth, and current age, were not interrogation requiring <u>Miranda</u>); <u>United States v. Jones</u>, 266 F.3d 804, 812 (8th Cir. 2001) (routine identification information questions are excepted from <u>Miranda</u> requirements); <u>United States v. Brown</u>, 101 F.3d 1272, 1274 (8th Cir. 1996) (stating, "[i]t is well-settled that routine biographical data is exempted from <u>Miranda</u>'s coverage.").

Defendant contends that the personal history questions related to his employment were "likely to produce incriminating statements" because such statements could be used to explain or disprove the source of money discovered during the search.  First, as the Government correctly notes, the money had not been found in the residence at the time that Defendant Tran was asked the personal history questions, which negates the suggestion that Agent Howe was asking the

employment questions for investigatory purposes rather than administrative purposes. Further, the Eighth Circuit has repeatedly held that background questions related to employment do not require a Miranda warning. United States v. McLaughlin, 777 F.2d 388, 392-93 (8th Cir. 1985) (questioning by a pretrial services officer relating to employment and home address not interrogation under Miranda); United States v. Duarte, 160 F.3d 80, 82 (8th Cir. 1998) (stating that employment status questions were "not designed to elicit incriminating responses" and were excepted from Miranda as routine booking questions). Because the questions on the personal history forms were mere booking or background questions Agent Howe was not required to give Defendant Tran any Miranda warnings and this Court recommends that the motion to suppress be denied.

### ii.    Questions Related to Money Found in the Freezer

The parties dispute when Defendant Tran was given Miranda warnings. Agent Howe testified that she gave Defendant Tran Miranda warnings as soon as the money was found and before asking Tran any questions relating to the money. In contrast, Defendant Tran testified that Agent Howe asked approximately three questions about the money before reading him his Miranda rights. After listening to both Agent Howe's and Defendant Tran's testimony, this Court finds Agent Howe's testimony was more credible. Therefore, the Court assumes that Defendant Tran was given Miranda warnings before any questions were asked about the money.

Defendant Tran contends that even his post-Miranda statements should be suppressed because the Miranda warnings were only given "midstream" and the previous interrogation therefore tainted the subsequent questioning. In Oregon v. Elstad, 470 U.S. 298, 318, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985), the Supreme Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and

confessing after he has been given the requisite <u>Miranda</u> warnings." <u>Id.</u>; <u>United States v. Ollie</u>, 442 F.3d 1135, 1140-41 (8th Cir. 2006). The Court went on to state, the "subsequent administration of <u>Miranda</u> warnings ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." <u>Id.</u> at 314. Unfortunately, the holding in <u>Elstad</u> led some law enforcement officers to intentionally question suspects without giving <u>Miranda</u> warnings, and once the officers elicited a confession, they would then give the warnings. If the suspect confessed again and the statement was challenged, courts relying on <u>Elstad</u> would often uphold their admissibility. <u>Ollie</u>, 442 F.3d at 1141; <u>Missouri v. Seibert</u>, 542 U.S. 600, 609-611, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004). The Court in <u>Seibert</u>, therefore, reconsidered the permissibility of a two-step interrogation technique, in a sharply divided opinion. The plurality stated that, to determine whether midstream warnings could be effective in advising a suspect of his or her rights, a court should consider five criteria: "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." <u>Id.</u> at 615.

While the Eighth Circuit sometimes has recited and applied the plurality's factors in determining the effectiveness of midstream <u>Miranda</u> warnings, "[b]ecause Justice Kennedy provided the fifth vote and his concurrence resolved the case on narrower grounds than did the plurality, it is his reasoning that rules [<u>Seibert</u>]." <u>Ollie</u>, 442 F.3d at 1142. Justice Kennedy concluded that post-<u>Miranda</u> statements should only be suppressed where the police intentionally used the two-step interrogation technique to render <u>Miranda</u> warnings ineffective. <u>Id.</u> Therefore, as the Eighth Circuit has stated "the key to <u>Seibert</u> is whether the police officer's technique was a

'designed,' 'deliberate,' 'intentional,' or 'calculated' circumvention of <u>Miranda</u>. <u>United States v. Black Bear</u>, 422 F.3d 658, 664 (8th Cir. 2005). It is the government's burden to prove that the second-round questioning was not a deliberate plan to circumvent <u>Miranda</u>. <u>Ollie</u>, 442 F.3d at 1142-43.

Under any analysis, the motion to suppress should be denied. First, the Court disagrees with Defendant that <u>Seibert</u> is applicable to the instant case. This is not a situation in which <u>Miranda</u> warnings were given "midstream" during an interrogation. Rather, the personal history questions were administrative and not investigatory in nature and did not require <u>Miranda</u> warnings. If the Court applies Justice Kennedy's rule, however, the post-<u>Miranda</u> statements are likewise admissible. Agent Howe did not deliberately circumvent <u>Miranda</u>; rather, she asked subsequent questions based on new information, which was developed during the questioning.

Finally, even if this Court applies the <u>Seibert</u> plurality's factors, the post-<u>Miranda</u> statements are still admissible. The personal history questions were only background questions and Agent Howe did not ask questions related to the money in the first round of questioning. Therefore, the personal history questions were not "complete" or "detailed" in comparison with the post-<u>Miranda</u> questions and the content of the two sets of questions did not overlap. Admittedly, the timing of the questions was close and all the questioning occurred in the same setting at Defendant's home. However, there is nothing in the record to indicate that Agent Howe treated the second round of questioning as continuous with the first. Rather, the second round of questioning only occurred because the executing officers uncovered money during the search. Because the questioning was not conducted in violation of Defendant Tran's <u>Miranda</u> rights, this Court recommends that the motion to suppress be denied.

### C.    Motions to Sever Defendants

Pursuant to Federal Rule of Criminal Procedure 14, Defendants Timothy Tran, Kevin Phan, Tuan Pham and Phuong Cong have all moved for severance from the other Defendants [Doc. Nos. 220, 255, 269, and 289]. The Defendants generally allege that they are not properly joined under Rule 8(b), that the jury will be unable to distinguish between the alleged actions of the various defendants, and that each defendant might introduce evidence that would be inadmissible against the others. None of the defendants have filed a supporting memorandum, however, providing any detailed explanation of these general arguments. The Government opposes severance, arguing that the defendants are all charged in one count of the indictment with conspiracy to manufacture marijuana, a conspiracy which allegedly involved all the defendants. Therefore, the Government maintains that evidence related to the conspiracy would be presented at trial, regardless of whether there was a joint trial or separate trials.

With respect to joinder of multiple defendants, an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transactions, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). If joinder is proper under Rule 8, the defendant seeking severance has the "heavy burden" of demonstrating that a joint trial will impermissibly infringe his right to a fair trial. United States v. Warfield, 97 F.3d 1014, 1019 (8th Cir. 1996). The Supreme Court has repeatedly stated that there is a preference in the federal system for joint trials of defendants who are indicted together because a joint trial promotes efficiency and eliminates the inequity of inconsistent verdicts. Zafiro v. United States, 506 U.S. 534, 536 (1993), cited in United States v. Bradford, 246 F.3d 1107, 1116 (8th Cir. 2001) (overruled on other grounds). Severance is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants,

or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539; United States v. Spotted Elk, 548 F.3d 641, 658 (8th Cir. 2008)).

In this case, the Indictment charges all the defendants with the same offense-conspiracy to manufacture marijuana. Absent any specific showing of how a joint trial of all defendants on the same charge would result in prejudice, there is no basis to sever. This Court therefore, recommends that the defendants' motions to sever be denied.

### D.      Defendant Johnny Tran's Motion to Suppress Identification

Based on the Fourth Amendment, Defendant Johnny Tran moves to suppress evidence from the May 28, 2009, stop and seizure of his person [Doc. No. 265]. Defendant Tran alleges that the stop and seizure was made without probable cause or reasonable suspicion and instead was conducted for the sole purpose of identifying Defendant. The Government responds that it does not plan to introduce the identification of Defendant Tran from the May 28, 2009 stop as evidence at trial, although it does plan to introduce his identification through separate evidence resulting from surveillance. Based on the Government's representations, the Court recommends that this motion be denied as moot.

### E.      Defendant Tuan Nguyen's Motion to Suppress Tracking Device

Defendant Tuan Nguyen moved to suppress the evidence derived from the tracking device attached to his vehicle because the warrant for the tracking device was not supported by probable cause [Doc. No. 296]. At the hearing, counsel for Defendant Tuan Nguyen indicated he was discussing the matter with the Government and would inform the Court whether he intended to proceed or withdraw his motion. Through the Government's Post-Hearing Response [Doc. No. 324], the Court understands that Defendant Nguyen is no longer challenging the tracking device. Consequently, the Court recommends that the motion to suppress be denied as moot.

### F.     Motions to Suppress Electronic Surveillance

Defendants Johnny Tran and Tuan Pham move to suppress all electronic surveillance and communications intercepted through electronic surveillance, arguing that the communications were unlawfully obtained under 18 U.S.C. §§ 2518(10)(a) and 2515 [Doc. Nos. 253 and 264]. The Government responds that there was no wiretap used in this case. Therefore, this Court recommends that the motions to suppress electronic surveillance be denied as moot.

## IV.     RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Johnny Cuong Tran's (01) Motion to Suppress All Electronic Surveillance and Any Evidence Derived Therefrom [Doc. No. 264] be **DENIED as moot**;

2. Defendant Johnny Cuong Tran's (01) Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches or Seizures [Doc. No. 265] be **DENIED as moot**;

3. Defendant Johnny Cuong Tran's (01) Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Interrogations [Doc. No. 266] be **DENIED as moot**;

4. Defendant Tuan Van Nguyen's (02) Motion to Suppress Tracking Device [Doc. No. 296] be **DENIED as moot**;

5. Defendant Timothy Quang Tran's (04) Motion to Sever Defendants Pursuant to Federal Rule of Criminal Procedure 14 [Doc. No. 220] be **DENIED**;

6.    Defendant Timothy Quang Tran's (04) Motion to Suppress Search Warrant Evidence [Doc. No. 221] be **DENIED**;

7.    Defendant Timothy Quang Tran's (04) Motion to Suppress Statements [Doc. No. 222] be **DENIED**;

8.    Defendant Kevin Dinh Phan's (05) Motion for Separate Trials [Doc. No. 269] be **DENIED**;

9.    Defendant Kevin Dinh Phan's (05) Motion to Suppress Evidence Obtained by Illegal Search and Seizure [Doc. No. 270] be **DENIED**;

10.   Defendant Tuan Ngoc Pham's (07) Motion to Suppress Communication Intercepted by Wiretap [Doc. No. 253] be **DENIED as moot**;

11.   Defendant Tuan Ngoc Pham's (07) Motion to Suppress Statements, Admissions, and Answers [Doc. No. 254] be **DENIED**;

12.   Defendant Tuan Ngoc Pham's (07) Motion for Severance, or in the Alternative, to Join Motions of Co-Defendants [Doc. No. 255] be **DENIED**;

13.   Defendant Tuan Ngoc Pham's (07) Motion to Suppress Search Warrant Evidence [Doc. No. 256] be **DENIED**;

14.   Defendant Vinh Xuan Hoang's oral motion to suppress evidence from search and seizure be **DENIED**;

15.   Defendant Phung Duc Hoang's (13) Motion to Suppress Evidence Obtained Through Illegal Search and Seizure [Doc. No. 285] be **DENIED**;

16. Defendant Phung Duc Hoang's (13) Motion for Suppression of Statements [Doc. No. 227] be **DENIED as moot**; and

17. Defendant Phuong The Cong's (15) Motion for Severance of Defendants [Doc. No. 289] be **DENIED**.

Dated:  October 9, 2009                    s/ Susan Richard Nelson_____
                                           Susan Richard Nelson
                                           U. S. Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by October 26, 2009, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.